**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph R. Roberson,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SMF, LLC, et al.,<br><br>　　　　　Defendants. | No. CV-19-01240-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendants' Motion to Compel Arbitration and Dismiss Without Prejudice. (Doc. 11). For the following reasons, the motion will be granted.

**I.    BACKGROUND**

Plaintiff Joseph Roberson worked for Defendant SMF, LLC as a supermarket clerk. (Doc. 11 at 2). Plaintiff called out from work on thirteen separate occasions within two months due to flareups of his asthma. (Doc. 1 at 5, 7, 8-9). Plaintiff alleges that, "[d]espite being on notice of Plaintiff's need for FMLA leave, Defendants did not provide Plaintiff with notice of his rights and responsibilities under the FMLA." (Doc. 1 at 7). Instead, Plaintiff alleges that "Defendants removed Plaintiff from the store schedule in an attempt to force him to quit his job and seek other employment because Plaintiff was exercising his rights under the FMLA and seeking a reasonable accommodation for his disability." (Doc. 1 at 10). On June 22, 2020, Plaintiff filed a Complaint in this Court alleging violations of the FMLA. (Doc. 1).

On October 8, 2020, Defendants filed a Motion to Compel Arbitration and Dismiss

Without Prejudice, at issue here. (Doc. 11). Defendants allege Plaintiff's claims are subject to mandatory arbitration under his employment agreement. (Doc. 11 at 2-3).

On November 2, 2020, Plaintiff filed his Response. (Doc. 13). Plaintiff argues he "did not sign an arbitration agreement in favor of SFM." (Doc. 13 at 1-2). However, Plaintiff also alleged he "cannot specifically deny the signature SFM alleges it has as his signature" because Defendants' Motion did not have the employment agreement attached as an exhibit. (Doc. 13 at 2). Plaintiff further argues that, even if he did sign an employment agreement that mandated arbitration, the agreement is not binding "because Plaintiff was unaware of the existence of an arbitration agreement during his employment with SFM." (Doc. 13 at 2). Plaintiff further provided an affidavit in which he alleged "[h]ad I been asked to sign an arbitration agreement, I would have refused." (Doc. 13 at 4).

On November 9, 2020, Defendants filed a Reply, which alleged that Defendants provided Plaintiff a copy of the arbitration agreement by overnight mail but that he never responded, and then sent Plaintiff a copy of the Motion to Compel with the agreement attached as an exhibit to the address Plaintiff has on file, which they later learned does not match the location where Plaintiff's declaration was executed. (Doc. 14 at 1, n.1). The Reply included as exhibits (i) copies of the multiple arbitration agreements signed by Plaintiff and (ii) a declaration of Defendants' HR Manager attesting to the validity of the arbitration agreement and Plaintiff's signature. (Docs. 14, 14-1, 14-2).

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4) (other citations omitted). If a district court decides that an arbitration agreement

is valid and enforceable, "then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

"Arbitration agreements are presumptively enforceable under the FAA 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Taleb v. AutoNation USA Corp.*, No. CV06–02013–PHX–NVW, 2006 WL 3716922, at *2 (D. Ariz. Nov. 13, 2006) (quoting 9 U.S.C. § 2). "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Thus, in determining the validity and enforceability of the arbitration agreement here, Arizona's law of contracts controls. *Taleb*, 2006 WL 3716922, at *2. While "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements," courts may not "invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted).

### III. ANALYSIS

Plaintiff does not identify any specific contract defenses such as fraud, unconscionability, or duress. Instead he argues that he was "unaware of the existence of an arbitration agreement during his employment with [Defendants]" and that "[h]ad [he] been asked to sign an arbitration agreement, [he] would have refused." (Doc. 13 at 2, 4).

The mere fact that one does not read a contract which he has signed is not *ipso facto* grounds to invalidate the writing. *Mut. Ben. Health & Acc. Ass'n v. Ferrell*, 42 Ariz. 477, 487, 27 P.2d 519 (1933) (overruled on other grounds). In *Ferrell*, the Arizona Supreme Court explained:

> [W]hen a party has an equal opportunity to read and examine
> a contract with the other party, it is his duty to do so, and, if he

> fails, he will not be permitted to avoid it on the ground that he did not read it or supposed it was different in its terms from what it really was.

*Id.* at 523; *see also Bradley v. Industrial Commission*, 51 Ariz. 291, 299, 76 P.2d 745, 748 (1938) ("When a person . . . has carelessly signed [a writing] without reading it, the mere fact that he believed it to be something else than what it was, when such belief was not brought about by the misconduct of the other party, furnishes no ground for the admission of parol evidence that he did not mean to execute it, for courts are not under the duty of relieving parties of the consequences of their own gross negligence.").

Here, there is no allegation or evidence that the contents of the document were misrepresented directly or indirectly to Plaintiff and consequently the elements of fraud or unconscionability are absent. At worst, no one showed Plaintiff the full text of the arbitration agreement or told him what was contained within. But absent some misrepresentation or coercion by Defendants, this is not sufficient to absolve Plaintiff of his negligence in not reading the contract. *See, e.g.*, *DMARC 2006-CD2 Indian Sch., LLC v. Bush Realty At Steele Park, LLC*, No. 1 CA-CV 14-0603, 2016 WL 7209656, at *3 (Ariz. Ct. App. Dec. 13, 2016) (finding that the plaintiff's "failure to read or understand the [contract] does not excuse him from liability" because "he does not claim he was defrauded into signing the [contract] or misled about its content"). Where such evidence is absent, the Court must look to the four corners of the contract to ascertain the intent of the contracting parties. *United California Bank v. Prudential Ins. Co. of America*, 681 P.2d 390, 410 (Ariz. Ct. App. 1983); *Central Arizona Water Conservation District v. United States*, 32 F. Supp. 2d 1117, 1127 (Ariz. 1998). The four corners of the contract here indicates a clear intent for the parties to submit this dispute to arbitration.

The first arbitration agreement Plaintiff signed electronically is clearly labeled "**MUTUAL BINDING ARBITRATION AGREEMENT**." (Doc. 14-2 at 7) (emphasis in original). Further, the agreement states clearly in underlined and bolded font: "**The Company and the Employee EXPRESSLY WAIVE their rights, if any, to have such claims heard by a court**." (Doc. 14-2 at 7) (emphasis in original). Additionally, the

agreement states that "any Dispute between the Employee . . . and the Company . . . that arise out of, relate in any manner, or have any relationship whatsoever to the employment or the termination of employment by Employee . . . shall be resolved by final and binding arbitration." (Doc. 14-2 at 7). Plaintiff then hand-signed a new arbitration agreement two years later. (Doc. 14-2 at 13-17). The second agreement is clearly labeled "<u>MUTUAL BINDING ARBITRATION AGREEMENT</u>." (Doc. 14-2 at 13) (emphasis in original). And again, the agreement covers "all complaints, charges, [and] claims . . . arising out of or related to [Plaintiff]'s employment with [Defendants] and/or termination thereof" and provides that "any claim . . . shall be submitted to final and binding arbitration." (Doc. 14-2 at 13). The instant claims by Plaintiff, which allege failure to provide FMLA leave and unlawful termination, fall directly within the claims covered by the arbitration agreement as they clearly deal with "the employment or the termination of employment" of Plaintiff. And in fact, the agreement provides that "[e]ither party may bring an action in court to compel arbitration under this Agreement." (Doc. 14-2 at 16). Plaintiff is bound by what he signed. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and Dismiss Without Prejudice (Doc. 11) is **granted**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to dismiss this action without prejudice and close the case.

Dated this 10th day of November, 2020.

Honorable Steven P. Logan
United States District Judge

5